UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| 3600 MICHIGAN CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:07-CV-367-PPS-APR |
| | ) | |
| | ) | |
| INFRA-METALS, CO. f/k/a PREUSSAG | ) | |
| INTERNATIONAL STEEL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on defendant Infra-Metals' motion for partial summary judgment on the issue of the ownership of three cranes that are currently located on the industrial property that is the subject of a lease dispute between the parties [DE 107].[1] Infra-Metals argues that it owns the Cranes pursuant to a lease agreement between the parties. Plaintiff 3600 Michigan disputes this, and asserts an ownership interest in the cranes based in part on Infra-Metals' alleged abandonment of the cranes when it vacated the industrial property it was leasing from 3600 Michigan. Along with its request for a finding that it owns the cranes, Infra-Metals asks the Court to bar 3600 Michigan from introducing any evidence at trial concerning the ownership of the cranes or damages resulting from repairs or upgrades to them, and to find that Infra-Metals is entitled to possession of the cranes or damages for their fair market value. For the reasons discussed below Infra-Metals' motion is **GRANTED in part** and **DENIED in part**.

---

[1]Unless otherwise indicated, citations to the docket refer to the docket in Case No. 2:07-CV-367.

**BACKGROUND**

The dispute in this case concerns an industrial property in Northwest Indiana, located at 3600 Michigan Road, East Chicago, Indiana, where the parties and their respective predecessors jointly operated a steel processing facility from 1992 to 1997. In 1994, 3600 Michigan's predecessors, James Buckmaster and James Buckmaster, Inc. entered into a sales and marketing agreement with Infra-Metals' predecessor, Preussag, whereby Buckmaster bought steel products that Preussag manufactured. In 1995, Buckmaster formed 3600 Michigan, and bought the property from Preussag, which continued to operate out of the property pursuant to the parties' sales and marketing agreement. On August 1, 1997, Infra-Metals agreed to terminate the sales and marketing agreement with 3600 Michigan, and enter into a lease agreement whereby Infra-Metals would lease the property from 3600 Michigan for a ten-year period, from 1997 to 2007. The termination agreement was entered into by Preussag, on the one hand, and Buckmaster and 3600 Michigan, on the other [DE 109-1]. The contemporaneous lease agreement was entered into by Preussag and 3600 Michigan, and is expressly incorporated by the Termination Agreement, and attached to it as Exhibit A [DE 109-1, ¶ 1(a) & at 9].

Six years into the Lease, in May 2003, Infra-Metals notified 3600 Michigan of its decision to vacate the property and cease making further rental payments. The parties eventually negotiated a 2003 amendment to the lease ("Amendment"), which progressively reduced Infra-Metals' rent over the four years remaining in the lease period, and required the parties to cooperate and use reasonable efforts to locate a new tenant for the property during this time. Unfortunately for Infra-Metals, no new tenant was found during this period. So Infra-Metals

continued to pay rent on the property it did not even occupy, albeit at the lower rate negotiated in the amendment.

Shortly after the July 2007 termination of the lease, 3600 Michigan sued Infra-Metals for breach of the Lease and the Amendment, including for Infra-Metals' alleged failure to fulfill certain obligations under those agreements (the "First-Filed Suit") [DE 1]. Infra-Metals counterclaimed, alleging that 3600 Michigan had breached its duty under the Amendment to use reasonable efforts to locate a new tenant [DE 2-2].

On October 17, 2008, more than five years after Infra-Metals vacated the property, Infra-Metals sought leave to amend its counterclaim to add claims for conversion and statutory replevin, relating to three industrial cranes located on the property which Infra-Metals contends it owns under the Lease [DE 21]. Magistrate Judge Rodovich denied that motion [DE 26]. But instead of appealing the denial to this Court, Infra-Metals filed its proposed conversion and statutory replevin claims in a new state court lawsuit, which was later removed to this District on June 18, 2009 (the "Crane Lawsuit") before Judge Miller [DE 2 in 2:09-CV-170]. 3600 Michigan answered the conversion and statutory replevin claims in the Crane Lawsuit, and asserted a number of affirmative defenses, including that Infra-Metals waived its right to, and is estopped from asserting, an ownership interest in the Cranes because it abandoned them, and that Infra-Metals' claims are barred by laches and the statute of limitations [DE 35, ¶¶ 2-3 & 5-6 in 2:09-CV-170].

3600 Michigan then moved for summary judgment in the Crane Lawsuit, arguing that Infra-Metals' claims were compulsory counterclaims in the First-Filed Suit, and thus barred in the Crane Lawsuit under principles of *res judicata* [DE 24-25 in 2:09-CV-170]. Judge Miller

denied that motion as premature, on the ground that no final judgment had been entered in the First-Filed Suit [DE 40 in 2:09-CV-170]. I later consolidated the Crane Lawsuit with the First-Filed Suit [DE 105], which put Infra-Metals' conversion and statutory replevin claims, and 3600 Michigan's defenses, before me to decide. Accordingly, I must consider those claims and defenses in evaluating Infra-Metals' pending request for a finding that it owns the Cranes.

## DISCUSSION

I.  **Interpretation of the Lease**

Infra-Metals says it owns the Cranes because the Lease unambiguously says so. This argument requires that I construe the Lease. The Lease contains a contractual choice of law clause that provides that it shall be governed by Indiana law [DE 109-1 at 23, Art. 34], and Indiana law respects the parties' choice of law clause. *See Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002); *Travelers Indemnity Company v. Summit Corp. of America*, 715 N.E.2d 926, 931 (Ind. Ct. App. 1999). In any event, neither party has raised a choice-of-law issue. And where the parties do not identify a conflict between the bodies of state law that might apply to their dispute, courts apply the law of the forum state. *See Gonzalez v. Volvo of Am. Corp.*, 752 F.2d 295, 299 (7th Cir. 1985) ("Where parties fail to raise a possible conflict of law, the better rule . . . is that the substantive law of the forum controls."); *see also Gould v. Artisoft, Inc.,* 1 F.3d 544, 549 n.7 (7th Cir. 1993) (same). Accordingly, I will apply Indiana substantive law to the dispute over the Lease.

Infra-Metals' contends that the Lease unambiguously provides that Infra-Metals owns the Cranes. Under Indiana law, the goal of contract interpretation is to ascertain the intent of the parties. *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc*., 802 N.E.2d 901,

906 (Ind. 2004). In the case of a written contract such as the Lease, the parties' intent is determined by looking first to the plain and ordinary meaning of the contract language. *USA Life One Ins. Co. v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997); *see also T-3 Martinsville, LLC v. US Holding*, LLC, 911 N.E.2d 100, 111 (Ind. Ct. App. 2009) ("A lease is construed in the same manner as any other contract.").

"Whether a contract is ambiguous is a question of law for the court." *Bernstein v. Glavin,* 725 N.E.2d 455, 459 (Ind. Ct. App. 2000) (citing *Western Ohio Pizza, Inc. v. Clark Oil & Refining*, 704 N.E.2d 1086, 1091 (Ind. Ct. App. 1999)). If the language of a contract is "clear and unambiguous," the court shall give that language "its plain and ordinary meaning." *Barclay v. State Auto Ins. Cos.*, 816 N.E.2d 973, 975 (Ind. Ct. App. 2004); *see also Ecorp, Inc. v. Rooksby*, 746 N.E.2d 128, 131 (Ind. Ct. App. 2001). Ambiguity does not exist simply because the parties dispute the meaning of the contract's terms. *Ecorp*, 746 N.E.2d at 131. Rather, an agreement contains ambiguities only if "reasonable people could come to different conclusions about the contract's meaning." *Id.*; *Chicago Southshore & South Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 633 (Ind. Ct. App. 1995); *see also Ind. Mills & Mfg., Inc. v. Evenflo Co., Inc.*, No. 1:04-cv-540, 2005 WL 3150164, at *5-6 (S.D. Ind. Nov. 22, 2005).

Here, the Lease clearly and unambiguously provides that Infra-Metals owns the Cranes. Preussag, Infra-Metals' predecessor, is defined under the Lease as the "Tenant" [DE 109-2 at 1]. And Article 1 of the Lease [*Id.*] provides that the Cranes are defined on Exhibit A, which in turn provides that "[n]otwithstanding anything in the Lease to the contrary, the cranes described on <u>Exhibit A-3</u> attached hereto and incorporated herein by this reference *are and shall remain the personal property of Tenant*" (the "Cranes") [DE 109-2 at 19, Ex. A; second emphasis added].

5

And then Exhibit A-3 goes on to describe the three industrial cranes that are in dispute here: a 25-ton Whiting Crane, a 10-ton Whiting Crane, and a 10-ton Engineered Crane [DE 109-2 at 23, Ex. A-3].

The language quoted in the preceding paragraph could not be any clearer; Infra-Metals owns the Cranes according to the Lease. And if that were not clear enough, the Lease underscores Infra-Metals' ownership of the Cranes in two additional provisions. First, Article 9, Fixtures and Personal Property, provides that "[a]ny trade fixtures, business equipment, inventory, trademarked items, signs and other removable property installed in or on [the property] by Tenant (*including, without limitation, the Cranes*) shall remain the property of Tenant" [DE 109-2 at 7; emphasis added]. Second, Article 19, which pertains to the Tenant's obligations when it surrenders the property to 3600 Michigan, "expressly exclud[es] all trade fixtures, signs and other personal property (*including, without limitation, the Cranes*) which remain the property of Tenant as provided in Article 9" [DE 109-2 at 11; emphasis added].

3600 Michigan does not dispute that the Lease, standing on its own, unambiguously provides that the Cranes belong to Infra-Metals. Instead, it argues that two ambiguities nonetheless exist, which prevent Infra-Metals from being entitled to summary judgment. First, 3600 Michigan contends that "it is ambiguous whether the parties intended for the Termination Agreement and the Lease to be read together" [DE 109 at 6]. Second, 3600 Michigan contends that construing those documents together, as 3600 Michigan suggests the Court should, reveals an ambiguity as to the ownership of the Cranes [*Id.*].

As an initial matter, unlike the Lease, the Termination Agreement provides that it shall be governed by Georgia law [DE 109-1 at 5, § 4.7]. Indiana law (which governs the Lease) and

6

Georgia law (which governs the Termination Agreement) both provide that contemporaneous contracts relating to the same subject matter must be construed together in determining the parties' intent. *Compare Estate of Penzenik v. Penz Products, Inc.*, 800 N.E.2d 1007, 1010 (Ind. Ct. App. 2003) ("in the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction or subject matter will, as a general proposition, be construed together") (quoting *Peoples Bank & Trust, Co. v. Price*, 714 N.E.2d 712, 716-17 (Ind. Ct. App. 1999); *and Noble Roman's, Inc. v. Ward*, 760 N.E.2d 1132, 1138 (Ind. Ct. App. 2002) (same) *with Moran v. NAV Servs.*, 377 S.E.2d 909, 910 (Ga. Ct. App. 1989).

Here, the Termination Agreement expressly incorporates the Lease, which is attached to the Termination Agreement as an exhibit [DE 109-1 at 1, ¶ 1(a) & at 9]. This, alone, indicates that these documents must be read together. *See Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 270 F.3d 1117, 1123 (7th Cir. 2001) ("the court cannot read portions of an agreement. . . . Rather, the document must be read as a whole when attempting to determine the parties' intentions"); *accord Megel v. Donaldson*, 654 S.E.2d 656, 660 (Ga. Ct. App. 2007). Moreover, the Lease and the Termination Agreement were both entered into on the same date by substantially the same parties and their privies, and both writings relate to the disposition of the property in light of the termination of the parties' sales and marketing agreement. This, too, shows that these documents must be construed together in determining the intention of the parties. *See Estate of Penzenik*, 800 N.E.2d at 1010; *accord Moran,* 377 S.E.2d at 910.

Evaluating 3600 Michigan's argument—that reading the Lease and Termination Agreement together produces an ambiguity—raises the question whether these documents,

*construed together as a whole*, should be construed in accordance with Georgia or Indiana law. Fortunately, I need not resolve this question here because Georgia law is no different from Indiana law with respect to the few fundamental interpretive principles that come into play here, including that the goal of contract interpretation is to ascertain the intent of the parties, *Irvin v. Laxmi, Inc*., 266 Ga. 204, 205, 467 S.E.2d 510 (Ga. 1996), that the parties' intent is determined by looking first to the plain and ordinary meaning of the contract language, *Park 'N Go of Ga. v. U.S. Fidelity G. Guar. Co.*, 266 Ga. 787, 791, 471 S.E.2d 500 (Ga. 1996), and that an agreement is ambiguous only if it is reasonably susceptible to more than one interpretation, *Municipal Elec. Authority of Georgia v. Gold-Arrow Farms, Inc*., 625 S.E.2d 57, 61 (Ga. Ct. App. 2005).

With that clarification, I turn now to the three lines of support 3600 Michigan offers for its argument that the Termination Agreement and the Lease, construed together, produces an ambiguity as to Crane ownership. In each instance, 3600 Michigan argues that the Termination Agreement shows that 3600 Michigan is in fact the owner of the Cranes, which 3600 Michigan says creates an ambiguity as to ownership given that the Lease provides that Infra-Metals owns them. None of these arguments, however, is persuasive.

*First*, 3600 Michigan argues that it owns the Cranes under the Termination Agreement because Paragraph (e), <u>Personal Property</u>, does not include the Cranes among the personal property that Infra-Metals purchased from 3600 Michigan under that agreement [DE 109 at 6]. Paragraph (e) provides that Infra-Metals shall pay a sum certain to Buckmaster for the items of personal property listed on Exhibit E to the Termination Agreement [DE 109-1 at 2, ¶ 1(e)]. And 3600 Michigan is correct to point out that the Cranes are not listed on Exhibit E [DE 109-1 at 58, Ex. E]. So, what? Paragraph (e) simply references a list of Buckmaster's personal

8

property that Infra-Metals agrees to purchase. For this provision to raise the suggestion that 3600 Michigan owns the Cranes, the Termination Agreement also would have to provide that the Cranes were among Buckmaster's personal property, which it does not. And even then, the absence of the Cranes on the Exhibit E list of property would contradict the Lease on the issue of Crane ownership only if Paragraph (e) also provided that all personal property not listed in Exhibit E remains Buckmaster's property, which it does not. Nowhere in the Termination Agreement or Lease are the Cranes defined as Buckmaster's personal property. Quite the contrary, the Lease provides that the Cranes "are and shall remain the personal property of" Infra-Metals [DE 109-2 at 19, Ex. A]. And this explains why the Cranes are not listed among the property that Infra-Metals agrees to purchase from Buckmaster under Paragraph (e)—because, as the Lease explains, the Cranes were not Buckmaster's property, but belonged instead to Infra-Metals, and remained so under the Termination Agreement. Thus, Paragraph (e) fails to contradict the Lease on the issue of Crane ownership.

*Second*, 3600 Michigan argues that, unlike the Lease, the Termination Agreement "explicitly and clearly states that the cranes are part of the premises leased under the Lease" [DE 109 at 7]. In support of this assertion, 3600 Michigan points to Paragraph 1(c) of the Termination Agreement, <u>Reimbursement of Venture Expenses</u>, which provides, in pertinent part, that

> [Infra-Metals] is entitled to a credit of $450,0000 for structural and crane repairs and/or replacements to the East Chicago, Indiana facilities (which facilities were utilized by the [parties' marketing and sales agreement] and constitute a portion of the premises leased pursuant to the Lease Agreement)

[DE 109-1 at 1, ¶ 1(c)]. This language, however, provides no evidence that 3600 Michigan owns the Cranes. 3600 Michigan's argument appears to be that Paragraph 1(c) provides that (1) the

9

Cranes are part of the "facilities" for which the $450,000 credit is designated; (2) the facilities are part of the premises that 3600 Michigan owns and leases to Infra-Metals; so (3) the Cranes are part of the leased premises, and thus owned by 3600 Michigan.

The problem with this argument is that the language of Paragraph 1(c) does not support premise (1). All that Paragraph 1(c) provides is that the $450,0000 credit is provided for "structural and crane repairs" **and/or** replacements to the "facilities." Far from including the Cranes as part of the facilities, this provision expressly *distinguishes* between the Cranes and the facilities. And the parenthetical in the above-quoted provision says only that the *facilities* are part of the leased premises, not that the *Cranes* are also part of those premises. So nothing about this provision contradicts the Lease on the issue of Crane ownership.

*Third*, 3600 Michigan argues that the credit provided to Infra-Metals by Paragraph 1(c) above, which is partly for repairs to the Cranes, would make "no economic sense" were Infra-Metals the owner of the Cranes [DE 109 at 7]. Specifically, 3600 Michigan argues that it would be "economically absurd" for it to agree to subsidize Infra-Metals' repairs to its own property. However, I fail to see any economic absurdity in this aspect of the parties' agreement.

3600 Michigan is correct that courts interpret contracts to avoid absurd results. Courts "apply this rule to reject one party's strained, literal reading of contract language in favor of the other party's reasonable commonsense reading." *BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 572 F.3d 353, 360 (7th Cir. 2009). But there is nothing strained about the literal reading of the Lease, according to which Infra-Metals is unambiguously designated as the owner of the Cranes. Moreover, no absurdity follows from the fact that the Termination Agreement provides an incentive to Infra-Metals to enter the Lease in the form of a credit for, among other things,

repairs to the Cranes. As Paragraph 1(c) goes on to say, this credit is in the form of a reduction in rent spread out over the term of the Lease.[2] Far from an absurdity, it reasonably would have been in Infra-Metals' economic interest to insist that 3600 Michigan help pay for Crane repairs as an incentive to agree to the Lease. And 3600 Michigan reasonably would have agreed to this, particularly given the (again, reasonable) expectation that Infra-Metals would use the credit not just for Crane repairs, but also for the structural repairs and replacements to the facilities, which Paragraph 1(c) authorizes. In any event, nothing about this trade-off warrants the application of the rule of interpreting contracts to avoid absurd results. *Cf. Dispatch Automation, Inc. v. Richards,* 280 F.3d 1116, 1118-19 (7th Cir. 2002) ("It would have been cockeyed . . . for the parties to have agreed that [defendant] would own successive versions provided they made only incremental improvements over their predecessors but that he would have no rights to a successive version that made a real breakthrough."); *Merheb v. Ill. State Toll Highway Auth.*, 267 F.3d 710, 713 (7th Cir. 2001) (rejecting employee's literal, "insane" reading of a workplace discipline manual).

In sum, construing the Lease together with the Termination Agreement, as I must, I still find that the Lease unambiguously provides that Infra-Metals owns the Cranes. This, however, does not fully resolve the issue of the ownership of the Cranes, which depends on whether Infra-Metals' actions in vacating the property, and not asserting its ownership rights till years later, had any effect on the ownership rights stated in the Lease. That is the issue I take up next.

## II. 3600 Michigan's Abandonment Defense

---

[2]"Such credit shall be taken against rent otherwise due under the Lease Agreement in an amount not to exceed the sum of $90,000.00 per year during the first five (5) years of the lease" [DE 109-1 at 2, ¶ 1(c)].

As I noted, currently pending in the Crane Case are Infra-Metals' conversion and statutory replevin claims, both of which are based on Infra-Metals' allegation that it owns the Cranes [DE 1 in 2:09-cv-170]. 3600 Michigan has asserted a number of affirmative defenses to those claims, including that Infra-Metals abandoned the Cranes from May 2003, when it vacated the property, to October 2008, when Infra-Metals sought leave to add its replevin and conversion claims as counterclaims [DE 35 in 2:09-cv-170].

Given this abandonment defense, and other affirmative defenses that 3600 Michigan has asserted, I cannot finally resolve the issue of the ownership of the Cranes based solely on the four corners of the Lease.[3] Under Indiana law, abandonment is "the relinquishment of property to which a person is entitled, with no purpose of again claiming it, and without concern as to who may subsequently take possession . . . ." *Right Reason Publications v. Silva*, 691 N.E.2d 1347, 1351 (Ind. Ct. App. 1998) (quoting *Schaffner v. Benson*, 166 N.E. 881, 883 (Ind. 1929)). "To constitute an abandonment of property, there must be a concurrence of the intention to abandon and an actual relinquishment." *Id.* (quoting *Schaffner*, 166 N.E. at 883). Moreover, "[a]n intention to abandon property . . . may be inferred as a fact from the surrounding circumstances, and it can be shown by acts and conduct clearly inconsistent with any intention to retain and continue the use or ownership of the property . . . ." *Id.* (quotation marks and citation omitted). "Abandonment of property divests the owner of his ownership, so as to bar him from further claim to it. Except that he, like anyone else, may appropriate it once it is abandoned if it

---

[3] 3600 Michigan has asserted a number of other affirmative defenses, such as laches, waiver and the statute of limitations, that are also based on the theory that Infra-Metals has waited too long to assert an ownership interest in the Cranes. But for purposes of resolving this motion, I need only address the abandonment defense, since doing so suffices to explain why I cannot resolve the ownership issue at summary judgment.

has not already been appropriated by someone else." *Long v. Dilling Mechanical Contractors, Inc.*, 705 N.E.2d 1022, 1025 (Ind. Ct. App. 1999) (quoting *Schuler v. Langdon*, 433 N.E.2d 841, 842 n. 1 (Ind. Ct. App. 1982)).

Under a theory of abandonment, if Infra-Metals relinquished possession of the Cranes, as 3600 Michigan contends it has, then that could have divested Infra-Metals of the ownership rights accorded to it under the Lease. Accordingly, the ownership of the Cranes cannot be resolved independently of the resolution of this affirmative defense.

There are fact issues that prevent the Court from resolving the abandonment issue at summary judgment, including and especially whether Infra-Metals' conduct is "clearly inconsistent with any intention to retain and continue the use or ownership of" the Cranes. For example, 3600 Michigan has attached an affidavit from Jim Buckmaster, who testifies that, after Infra-Metals vacated the premises, Infra-Metals made no effort to obtain possession of the Cranes from 2003 through 2007 [DE 109-3]. This conduct certainly appears inconsistent with an intention to retain ownership of the Cranes. But on the other hand Infra-Metals points out that it "paid personal property taxes due to the State of Indiana for the Cranes for a period of approximately ten years while the Lease was in effect" [DE 110 at 7], which points in the opposite direction. This conflicting evidence, alone, is enough to create a fact issue as to the abandonment defense, and thus to prevent the Court from resolving that defense at summary judgment. And because the validity of the abandonment defense affects Infra-Metals' ownership rights in the Cranes, the Court also cannot resolve the Crane ownership issue at the summary judgment stage. *Cf. U.S. v. Armstrong*, No. 1:06-cv-884, 2008 WL 5531398, at *10 (S.D. Ind. Jun. 11, 2008) (unable to resolve issue of ownership of personal property at summary judgment

due to fact questions as to whether property had been abandoned).

## CONCLUSION

For the foregoing reasons, Infra-Metals' motion for partial summary judgment [DE 107] is **GRANTED in part** and **DENIED in part**.  Specifically, the Court finds that the Lease and Termination Agreement unambiguously provide that Infra-Metals owns the Cranes.  The Court therefore will not receive any evidence at trial on the parties' intent as to the original ownership of the Cranes at the time the Lease was executed because it is unambiguous.  However, given 3600 Michigan's pending defense of abandonment and other affirmative defenses and the questions of fact that persist on those issues, I cannot at this time make an ultimate determination of the ownership of the Cranes at this time.  These issues must be resolved at trial.  Infra-Metals is therefore not, at this time, entitled to possession of the Cranes or damages for their fair market value.  Moreover, 3600 Michigan may present evidence at trial concerning the ownership of the Cranes, based on their affirmative defenses, and evidence concerning 3600 Michigan's alleged damages resulting from repairs and upgrades to the Cranes.

**SO ORDERED**.

ENTERED: April 13, 2011

/s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT